UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANDREW ASHER WALTERS,

       Petitioner,

v.                                   Case No.  8:20-cv-474-WFJ-AAS

SECRETARY, DEPARTMENT
OF CORRECTIONS,

       Respondent.
_____/

## ORDER

      Before the Court is Andrew Asher Walters' Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. Doc. 1. The Secretary of the Florida Department of Corrections filed a response in opposition, Doc. 13, to which Mr. Walters replied, Doc. 17. Upon consideration, the Court denies Mr. Walters' Petition.

## I. BACKGROUND AND PROCEDURAL HISTORY

      In 2007, Mr. Walters was convicted by a jury of first-degree murder and armed robbery with a firearm. Doc. 14-2 at 207–09. He was sentenced to life in prison on both counts. *Id.* at 202–10. The convictions and sentences were affirmed on appeal. Doc. 14-4 at 86.

      Mr. Walters filed a post-conviction motion under Florida Rule of Criminal Procedure 3.800(a), challenging his sentence for the armed robbery conviction as

invalid. *Id.* at 90−95. The motion was denied, *id.* at 106−08, and the denial was affirmed on appeal, *id.* at 175.

Mr. Walters also filed a post-conviction motion and an amended motion under Florida Rule of Civil Procedure 3.850 in which he alleged nineteen grounds for relief based upon his trial counsel's supposed ineffective assistance. Doc. 14-5 at 54-337. The post-conviction court dismissed three of the claims with leave to amend, denied thirteen of the claims, and directed the State to respond to the remaining claims. Doc. 14-6 at 2−65. Mr. Walters amended the three claims that were dismissed with leave to amend, *id.* at 66−78, and the State responded to the remaining claims as directed, *id.* at 298. Following receipt of the State's response, the post-conviction court scheduled a bifurcated evidentiary hearing. *Id.* at 299−300. After the evidentiary hearing, Doc. 14-8 at 22−184, the post-conviction court entered a final order denying relief, Doc. 14-7 at 2−44. The denial was affirmed on appeal. Doc. 14-9 at 120.

In February 2020, Mr. Walters filed his present Petition before this Court, in which he raises sixteen grounds for relief. Doc. 1.

## II. GOVERNING LEGAL PRINCIPLES

Because Mr. Walters filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003). The AEDPA

"establishes a more deferential standard of review of state habeas judgments." *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001). This standard "prevent[s] federal habeas 'retrials' and [] ensure[s] that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that a federal habeas court's evaluation of state court rulings is highly deferential and that state court decisions must be given the benefit of the doubt).

Standard of Review Under the AEDPA

Under the AEDPA, habeas relief may not be granted regarding a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Sec'y for Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The Supreme Court explained that:

> [u]nder the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams*, 529 U.S. at 412–13. Federal habeas relief under this section is only available "if the state court's application of clearly established federal law was objectively unreasonable." *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001) (citing *Williams*, 529 U.S. at 409–10).

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835–36; 28 U.S.C. § 2254(e)(1).

Standard for Ineffective Assistance of Counsel

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief due to ineffective assistance of counsel. A court must ask: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense. *Id.* at 687–88. A

court must adhere to the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689−90. Where the court examines the performance of experienced trial counsel, this presumption of reasonable conduct is even stronger. *See Fugate*, 261 F.3d at 1216. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220−21 (11th Cir. 1992) (internal citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

## III. ANALYSIS

<u>Ground One: The Trial Court Erred in Overruling the Petitioner's Objection to the
Use of His Alias, "Murder"</u>

In Ground One, Mr. Walters contends that his right to a fair trial under the
Fifth, Sixth, and Fourteenth Amendments of the Constitution was violated when the
trial court allowed witnesses and the prosecution to repeatedly refer to Mr. Walters
by his nickname or street name, "Murder," over defense counsel's objection. Doc. 1
at 3–4. Mr. Walters argues that any probative value of using his nickname was far
outweighed by the unfair prejudice it caused. *Id.* He further asserts that using his
nickname was highly prejudicial given that he was on trial for murder. *Id.* at 4.
According to Mr. Walters, the use of his nickname caused the jury to ultimately
conclude that he must have been guilty of the charged homicide. *Id.* at 3. Thus, he
contends that his Fifth, Sixth, and Fourteenth Amendment rights were violated. *Id.*

As an initial matter, Respondent opposes this ground as unexhausted because
Mr. Walters neither preserved a federal constitutional claim at trial nor presented a
federal constitutional claim to the state court on direct appeal. Doc. 13 at 8–11. Mr.
Walters replies that "this issue was presented on direct appeal to the highest State
court available to him and therefore he has exhausted his State remedies." Doc. 17 at
5. Although he "concedes that his '*court appointed counsel*' failed to cite federal case
law in his State appellate brief, or to mention 'federal' within the dicta of the claim,"
Mr. Walters contends that his constitutional rights were violated by the state court's
decision to permit the use of his nickname. *Id.* (emphasis in original). Mr. Walters

asserts that "the failure of *court appointed counsel* to federalize the Petitioner's claims at the State level is no fault of his own and he should not be penalized for counsel's ineptitude[.]" *Id.* at 7 (emphasis in original).

Before a federal court can grant habeas relief, a petitioner must exhaust every available state court remedy for challenging his conviction, either on direct appeal or in a state post-conviction motion. 28 U.S.C. § 2254(b)(1)(A), (C). "[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *see also Henderson*, 353 F.3d at 891 ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.").

To exhaust a claim, a petitioner must present the state court with both the particular legal basis for relief and the facts supporting the claim. *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). As the Supreme Court explained in *Baldwin v. Reese*, 541 U.S. 27, 32 (2004), a petitioner must alert the state court that he is raising a federal claim as opposed to a state law claim. A petitioner may do so by, for example, "citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Id.* "It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982).

"If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). To show prejudice, a petitioner must demonstrate not only that an error at the trial created the "*possibility* of prejudice, but that [the error] worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original). In other words, a petitioner must show at least a reasonable probability of a different outcome. *Henderson*, 353 F.3d at 892.

Absent showing cause and prejudice, a petitioner may obtain federal habeas review of a procedurally defaulted claim only if review is necessary to correct a "fundamental miscarriage of justice." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986). A fundamental miscarriage of justice occurs if "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (quoting *Carrier*, 477 U.S. at 496). To show such a fundamental miscarriage of justice, a petitioner must first demonstrate a constitutional error coupled with "new reliable evidence— whether . . . exculpatory scientific evidence, trustworthy eyewitness accounts, or

8

critical physical evidence—that was not presented at trial." *Id.* at 324. The petitioner must then show that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* at 327.

A review of the record shows that although Mr. Walters challenged the use of his nickname in the state courts, he argued only a violation of state law and did not assert any federal constitutional violation. Doc. 14-2 at 271; Doc. 14-4 at 18–25. To be sure, Mr. Walters did not cite a federal constitutional amendment or federal constitutional law, nor did he label the ground as "federal." *See Baldwin*, 541 U.S. at 27. Consequently, Mr. Walters did not "fairly present" a federal constitutional violation to the state court. *See id*; *Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1352 (11th Cir. 2012) ("to exhaust state remedies fully, the petitioner must make the state court aware that the claims asserted present federal constitutional issues"); *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 458 (11th Cir. 2015) (explaining that *Baldwin* and *Lucas* "stand for the proposition that a petitioner with a claim that could arise under either state or federal law must clearly indicate to the state courts that he intends to bring a federal claim").

Mr. Walters' failure to fairly present his federal claim deprived the court of a "full and fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Boerckel*, 526 U.S. at 845. Consequently, Ground One has not been exhausted. State procedural rules preclude Mr. Walters from returning to state court to present his federal claim in either a second direct appeal or other collateral motion for post-conviction relief.

Mr. Walters' failure to properly exhaust his federal claim in the state court results in a procedural default.

In an attempt to avoid this default, Mr. Walters argues that his appellate counsel deficiently performed in failing to raise the federal claim on direct appeal. Doc. 17 at 7.  Ineffective assistance of counsel may establish cause, but a petitioner must separately exhaust his ineffective assistance of counsel claim. *Henderson*, 353 F.3d at 896 (citing *Edwards*, 529 U.S. at 452). Because Mr. Walters failed to exhaust the claim in a petition alleging ineffective assistance of appellate counsel, the alleged ineffective assistance of Mr. Walters' appellate counsel does not establish cause. *See, e.g.*, *Kirksey v. Sec'y, Fla. Dep't of Corr.*, 2018 WL 7139263m at *6 (11th Cir. 2018) (petitioner could not rely on claim that appellate counsel was ineffective as cause for procedural default because "[a]lthough [the petitioner] raised a claim of ineffective-assistance-of-appellate-counsel in a Rule 3.850 motion, he did not argue that appellate counsel failed to raise the federal nature of his [] argument on direct appeal.") Moreover, Mr. Walters cannot meet the "fundamental miscarriage of justice" exception because he presents no "new reliable evidence" that he is actually innocent. *Schlup*, 513 U.S. at 327.

Because Mr. Walters satisfies neither exception to procedural default, Ground One is procedurally barred from federal review. Accordingly, Ground One warrants no relief.

<u>Ground Two: The Trial Court Erred by Failing to Hold a *Neil* Inquiry When the
Petitioner Objected to the Challenges of Jurors as Racially Discriminatory</u>

Next, Mr. Walters contends that the trial court erred under Florida law when
it failed to conduct a *Neil* inquiry[1] after the State struck two Black individuals—Mr.
Jackson and Ms. Ellis—from the jury panel, prompting Mr. Walters' counsel to
object to the strikes as racially motivated. Doc. 1 at 5. Mr. Walters also contends that
the strikes of these two individuals violated his right to equal protection. *Id.*

*1. Failure to Conduct <u>Neil</u> Inquiry*

Turning to the first portion of this claim, Respondent correctly asserts that Mr.
Walters' claim that the trial court failed to conduct a *Neil* inquiry is not a cognizable
claim in a federal habeas proceeding. Doc. 13 at 19; *see Carrizales v. Wainwright*, 699
F.2d 1053, 1055 (11th Cir. 1983) ("A state's interpretation of its own laws or rules
provides no basis for federal habeas corpus relief, since no question of a
constitutional nature is involved."). Accordingly, this portion of Ground Two
warrants no relief.

*2. Denial of Equal Protection*

As to the second portion of this claim, Mr. Walters raised a federal claim on
direct appeal alleging that he was denied equal protection based on *Batson v.
Kentucky*, 476 U.S. 79 (1986). Doc. 14-4 at 26. Under *Batson*, striking prospective
jurors solely due to their race violates the Equal Protection Clause. 476 U.S. at 89.

---

[1] *See State v. Neil*, 457 So. 2d 481 (Fla.1984) (establishing procedures for preserving an
objection based on the alleged exclusion of a juror solely due to race).

As the Supreme Court has explained, a *Batson* claim requires a court to engage in a

three-part inquiry:

> First, the defendant must make out a prima facie case "by showing that
> the totality of the relevant facts give rise to an inference of discriminatory
> purpose." [*Batson*,] 476 U.S. at 93–94 (citing *Washington v. Davis*, 426
> U.S. 229, 239–42 (1976)). Second, once the defendant has made out a
> prima facie case, the "burden shifts to the State to explain adequately the
> racial exclusion" by offering permissible race-neutral justifications for the
> strikes. [*Id.*] at 94; *see also Alexander v. Louisiana*, 405 U.S. 625, 632 (1972).
> Third, "[i]f a race-neutral explanation is tendered, the trial court must
> then decide . . . whether the opponent of the strike has proved purposeful
> racial discrimination." *Purkett v. Elem*, 514 U.S. 765, 767 (1995) (*per
> curiam*).

*Johnson v. California*, 545 U.S. 162, 168 (2005).

Concerning Mr. Walters' present claim, the record reflects that the trial judge,

prosecutor, defense attorney Mr. Sinardi, and potential juror Mr. Jackson engaged in

a side-bar conference during *voir dire*. The following exchange took place during the

side-bar:

> THE COURT: What do you wish to tell me?
> MR. JACKSON: I just have a son who went through the system, served ten
> years in prison for drugs, robbery. First time offense and I thought he had a
> prosecutor that [*sic*] down on him hardly --
> THE COURT: Too harsh. Was that here in Hillsborough County?
> MR. JACKSON: Yeah, Hillsborough County.
> THE COURT: And how old is he?
> MR. JACKSON: He's 28 right now.
> THE COURT: And he received 13 years in prison.
> . . .
> THE COURT: He was just recently sentenced?
> MR. JACKSON: No, he -- he just -- October '06 he was just released.
> THE COURT: So he was like 18 when he went to prison?
> MR. JACKSON: Right. So I just had a -- I just got an issue with an over
> zealous prosecutor as well as poor representation on his case.

THE COURT: Okay, so if I -- if I can paraphrase it, he was on the wrong, but the State was unduly harsh on him and the Defense was not adequate, is that what you're saying?

MR. JACKSON: Exactly.

THE COURT: State or Defense, do you have any questions for Mr. Jackson?

MR. SINARDI: Yes, sir, Mr. Jackson --

THE COURT: I'm sorry, I'm interrupting, and you feel that will affect your ability to [be] fair and impartial in this case?

MR. JACKSON: Well, I don't -- I don't have any -- any problem just with trying to be fair about it but I do have some feelings --

THE COURT: Yes, and thinking about the criminal justice system.

MR. JACKSON: -- the process and stuff like that.

THE COURT: Mr. Sinardi?

MR. SINARDI: Can you set those feelings aside and follow the law as given to you by the Judge against it -- with the facts?

MR. JACKSON: Well, like I said, I don't -- I don't -- I'll do the best I can if selected.

THE COURT: I don't want you to have to do the best you can, I want you --

MR. JACKSON: To uphold -- the process.

THE COURT: -- to be candid with me and tell me if you think it's going to affect your ability, let me know now.

MR. JACKSON: All right, I would say it will.

THE COURT: Okay, thank you.

Doc. 14-2 at 371–73.

The prosecutor later moved to strike Mr. Jackson for cause, prompting defense counsel to object. *Id.* at 417–19. Though defense counsel objected on the basis that "Mr. Jackson is a black male and [Mr. Walters] is a black male," he simultaneously acknowledged that Mr. Jackson informed the trial court that he could not be fair and impartial. *Id.* at 419–20. The trial court ultimately granted the strike for cause. *Id.*

Based on the foregoing, Mr. Walters has not demonstrated that he is entitled to relief. A race-neutral reason was given for striking Mr. Jackson: he expressly stated that he could not be fair and impartial because he believed his son had been treated unfairly by the criminal justice system. The Court agrees with the trial court's

determination that this was a race-neutral reason to strike Mr. Jackson. *See, e.g.*, *Murphy v. Dretke*, 416 F.3d 427, 433 (5th Cir. 2005) (having a close family member who was treated unfairly by the criminal justice system is race-neutral reason to strike). And there is no indication that the State was engaged in purposeful discrimination by striking Mr. Jackson for cause. The Court therefore defers to the trial court's decision that Mr. Jackson was being stricken for cause by the State for race-neutral reasons.

Turning to the striking of potential juror Ms. Ellis, the *voir dire* transcript reflects that Ms. Ellis informed the prosecutor that serving on the jury would be a financial hardship:

> MS. ELLIS: This is my week of vacation. My children are out on spring break and I have no daycare.
> MR. MOODY: So the jury selection process was good in that you're not going to miss work but not so good in the fact that you're going to -- what would you do with your children if you were selected on this jury this week?
> MS. ELLIS: Probably hire a babysitter.
> MR. MOODY: Is that going to be --
> THE COURT: For the record, you're Ms. Ellis?
> MS. ELLIS: Yes.
> MR. MOODY: Juror number 30. Is that --
> MS. ELLIS: Well, I am a single parent.
> MR. MOODY: Is that going to be a financial hardship on you if you were selected on this jury?
> MS. ELLIS: Yes, it definitely is.
> MR. MOODY: Is that the sort of thing that might -- you'd be worried about that rather than paying attention to the evidence in this case?
> MS. ELLIS: Yes, sir.

*Id.* at 300−01. Moreover, Ms. Ellis testified that her brother had recently received a 20-year sentence for home invasion. *Id.* at 376, 402. She also testified that she and her daughter had been victims of domestic violence in recent years. *Id.* at 400−02.

14

The prosecutor later moved to strike Ms. Ellis through a peremptory challenge. *Id.* at 425. Defense counsel objected, arguing that "Ms. Ellis is an African American female and Mr. Walters is an African American." *Id.* The trial court granted the strike, finding that Ms. Ellis's risk of financial hardship and her brother's recent sentencing were race-neutral motivations for the strike. *Id.* at 425−26. The Court agrees that these were sufficient race-neutral reasons to strike Ms. Ellis from the jury panel. *See, e.g.*, *United States v. Gold*, 22 F. App'x 721, 723 (9th Cir. 2001) (juror's substantial financial hardship was a valid, race-neutral explanation for the government's exercise of peremptory challenge). There is no indication that the State was purposefully discriminating against Ms. Ellis on the basis of race. The Court therefore defers to the state court's finding that the State's race-neutral reasons for striking Ms. Ellis were sufficient.

Ultimately, Mr. Walters has not demonstrated that the State engaged in any purposeful racial discrimination during jury selection. The post-convcition court's rejection of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. As such, Mr. Walters is not entitled to any relief on Ground Two.

Ground Three: Trial Counsel Rendered Ineffective Assistance by Failing To Object to the Trial Court's Reading of the Co-Defendant's Name on the Indictment

Next, Mr. Walters contends that his trial counsel offered ineffective assistance by failing to object when the trial court read aloud his co-defendant's name—Richard Sampeur—when reading the indictment to the jury panel during *voir dire*. Mr.

Walters argues that "the inclusion of the co-defendants [*sic*] name in the indictment, when he had already been convicted of the same charges [he] was facing, lessened the State's burden of proof" because "[t]he allegations were then easily proven when the co-defendant testified as to his involvement in the crimes that the Petitioner was charged with." Dkt. 1 at 6. As such, Mr. Walters claims that his Fifth, Sixth, and Fourteenth Amendment rights were violated. *Id.*

Mr. Walters raised this claim as his first ground for relief in his amended Rule 3.850 motion filed in post-conviction court. *See* Doc. 14-5 at 181–86. Applying the ineffective assistance of counsel standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), the post-conviction court determined that Mr. Walters' claim was due to be denied because he failed to "establish that he was prejudiced by counsel's failure to object to the reading of the indictment, which included co-defendant's name." Doc. 14-6 at 4–6. The court explained Mr. Walters suffered no prejudice because Mr. Sampeur testified to the following: he was involved in and charged with the crimes alleged in the indictment; he "cut a deal with" the State and pled guilty to armed robbery and a lesser charge of second-degree murder; he was sentenced to 25 years in prison and 15 years of probation; and he received immunity for his testimony. *Id.* at 6–8. The appellate court affirmed the post-conviction court's ruling without a written opinion. Doc. 14-9 at 120.

The post-conviction court's determination that Mr. Walters did not demonstrate prejudice as required by *Strickland* is supported by the record. At the start of *voir dire*, the trial court read aloud part of the indictment, including the

16

portion stating that both Mr. Walters and Mr. Sampeur were charged with murder and armed robbery. Doc. 14-2 at 281−82. But this was not the only time the jury learned of Mr. Walters' co-defendant. During multiple points in the trial, the jury heard that Mr. Sampeur pled guilty to second-degree murder and armed robbery and was cooperating with the State. Doc. 14-3 at 28, 33, 413−14, 446−47. Therefore, even if counsel had successfully objected to the trial court's reading of Mr. Sampeur's name during *voir dire*, the jury still would have learned of Mr. Sampeur's charges and guilty plea. Thus, it was not unreasonable for the post-conviction court to find that Mr. Walters was not prejudiced by the trial court's reading of Mr. Sampeur's name to the jury panel.

Nevertheless, Mr. Walters argues that including Mr. Sampeur's name in the indictment "lessened the State's burden of proof." Doc. 1 at 6. The Court disagrees. As discussed above, the jury would have learned that Mr. Sampeur was charged with the same crimes as Mr. Walters even if Mr. Sampeur's name had been omitted from the indictment. Moreover, before the indictment was read, the trial court told the prospective jurors, "[y]ou must not consider the charge against the defendant as evidence of the defendant's guilt and you must not be influenced by the fact that this document has been filed against the defendant." Doc. 14-2 at 281. And during the jury charge, the jury was instructed that: (1) it must presume Mr. Walters' is innocent; (2) the State has the burden to prove Mr. Walters guilty beyond a reasonable doubt; and (3) it "should use great caution in relying on

the testimony of a witness who claims to have helped the defendant commit a

crime." Doc. 14-3 at 541−42, 544. Thus, the jury was well aware that nothing in the

indictment was evidence of Mr. Walters' guilt and that the State had the burden to

prove that Mr. Walters committed each crime beyond a reasonable doubt. *See Adams*

*v. Wainwright*, 709 F.2d 1443, 1447 (11th Cir.1983) ("[A] jury is presumed to follow

jury instructions.").

Accordingly, Mr. Walters has failed to show that the post-conviction court's

decision was an unreasonable application of *Strickland* or based on an unreasonable

determination of the facts in light of the evidence presented. Ground Three warrants

no relief.

Ground Four: Trial Counsel Rendered Ineffective Assistance for Failing to Move to
Strike the Jury Panel After the State Remarked that the Co-Defendant Had Been
Charged With the Same Offenses, Entered a Plea, and Received His Sentence

In Ground Four, Mr. Walters contends that his trial counsel offered ineffective

assistance by failing to move to strike the jury panel after the prosecutor "remarked

that the jury 'should consider' that the Petitioner's co-defendant has been charged

with the same offenses, had entered a guilty plea, and was or would be sentenced."

Doc. 1 at 7. According to Mr. Walters, the prosecutor's remark "allowed the jury to

make the inference and presume that if Petitioner Walters was a co-defendant then

he too must be guilty of the crimes he was facing[,]" such that "all the State had to

do was throw up a minimal amount of evidence to obtain a judgment of guilty

because any reasonable person would concur that if two people were together and

one admitted to being guilty of murder, the other one was just as culpable[.]" *Id.*  Mr.

Walters asserts that this alleged ineffective assistance of counsel violated his Fifth, Sixth, and Fourteenth Amendment rights. *Id.*

This claim was raised in the second ground for relief in Mr. Walters' amended Rule 3.850 motion before the post-conviction court. Doc. 14-5 at 186−88. In denying the claim, the post-conviction court reviewed the prosecutor's statement to the jury panel. The prosecutor had stated:

> You also will hear from a former co-defendant of Mr. Walters, Richard Sampeur. He was charged within the same indictment the same crimes and has entered a plea and has received a sentence or will receive a sentence. And you're going to hear from - - the Judge is going to tell you that's something you should consider and listen to carefully instruction with that [*sic*], is there anyone here who can't do that? Mr. Owens? Ms. Brown? And the same question on this side. Listen to the evidence, apply it to the law and sit in judgment of another following the law as the Judge gives you.

Doc. 14-2 at 343−44. The post-conviction court ultimately determined that Mr. Walters failed to demonstrate prejudice as required by *Strickland* because Mr. Sampeur testified at trial to the matters referenced by the prosecutor. Doc. 14-6 at 9−10. The court further stated, "it was permissible during voir dire for the State to ascertain whether any prospective juror would have trouble following the instructions given by the Judge related to the confession of the co-defendant." *Id.* at 343. The appellate court affirmed without a written opinion. Doc. 14-9 at 120.

The post-conviction court's determination that Mr. Walters did not show that he was prejudiced by the prosecutor's statement is supported by the record. Even if the prosecutor had not made the aforementioned statement during voir dire, the jury would have heard the same information from Mr. Sampeur, himself, when he

testified at trial. And despite Mr. Walters' assertion to the contrary, nothing in the prosecutor's statement suggested that Mr. Walters was guilty of the charged crimes simply because Mr. Sampeur had already pled guilty. This is particularly true in light of the fact that—in addition to informing the jury panel that the indictment was not evidence of Mr. Walters' guilt and instructing the jury on the State's burden of proof—the trial court reminded the jury that "what the attorneys say is not evidence." Doc. 14-3 at 499.

Mr. Walters has failed to show that the state court's decision was an unreasonable application of *Strickland* or based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, Mr. Walters is not entitled to relief on Ground Four.

Ground Five: Trial Counsel Rendered Ineffective Assistance by Conceding to Petitioner's Guilt Without Consent

Mr. Walters next contends that he received ineffective assistance of counsel in violation of his Fifth, Sixth, and Fourteenth Amendment rights when his trial counsel conceded without consent that Mr. Walters was guilty of robbery. Doc. 1. at 8–10. He asserts that this concession of guilt took place when his trial counsel stated during closing arguments that Mr. Walters "shared in the proceeds of the robbery." *Id.* at 9. Mr. Walters further argues that by conceding to his guilt in the robbery, the "jury could then infer that . . . he must be guilty of the homicide as well." *Id.* According to Mr. Walters, if his counsel had not conceded his guilt, "the jury would have not believed the State's evidence and acquitted [him] of the crimes[.]" *Id.*

Moreover, Mr. Walters asserts that his trial counsel "condemned [his] defense" by stating that "impressing the girls was [Mr. Walters'] modus operandi." *Id.* Specifically, Mr. Walters maintains that using the term "modus operandi" was damaging because it "is universally used in association with criminal activities" and "is used in literally every crime show on television and is very well known to the lay juror coming in off the street." *Id.*

Mr. Walters raised this claim before the post-conviction court as the fourth ground in his amended Rule 3.850 motion. Doc. 14-5 at 192–94. The post-conviction court reviewed the allegations, court file, and record, and found that there was nothing prejudicial about defense counsel's statements in question. In denying Mr. Walters' claim, the post-conviction court found that "counsel did not stipulate to any facts tending to establish guilt[.]" Doc. 14-6 at 13. The court further found that "all [defense counsel] did 'concede' was that Defendant knew the girls who testified against him, and may have been trying to impress them." Doc. 14-6 at 13. To be sure, defense counsel merely stated during trial:

> And, again, we go back to what evidence is there? What -- what real evidence is there? And, of course, we go back to the girls. And I agree wholeheartedly with the State that Cash, Andrew Walters, JP, Scentz, were trying to be big shots. They were trying to -- what's a tactful word here? Become romantic with these girls. They wanted to be big shots. They wanted -- they -- they -- they were trying to impress these girls, all of these girls. I asked Sampeur all those questions, Princess, Connie, all the other girls, the girls in Miami, etc. That was the MO was to see how many girls they could get, I guess, because that's what it sounded like. You use your commonsense, you figure it out.

Doc. 14-3 at 519. The court therefore concluded that Mr. Walters failed to establish both deficient performance and prejudice as required by *Strickland*. Doc. 14-6 at 13–14. The appellate court affirmed without a written opinion. Doc. 14-9 at 120.

Nothing within the above statement amounts to a concession that Mr. Walters was involved in the underlying robbery. In fact, after defense counsel made those comments, he argued that Mr. Walters was not guilty of the charged robbery simply by virtue of knowing Mr. Sampeur and knowing about the robbery. Doc. 14-3 at 521. He further stated that there was no credible evidence showing that Mr. Walters participated in either the homicide or the robbery. *Id.* at 538. In making the above statement and by using the term "MO",[2] counsel was not conceding guilt. Rather, he was arguing that Mr. Walters and other men were trying to impress women by lying about being "tough" "big shots." *See* Doc. 14-3 at 519. As evidenced by the context in which defense counsel made the statements, these comments did not concede guilt or imply Mr. Walters was involved in criminal activity.

As such, Mr. Walters has failed to show that the post-conviction court's decision was an unreasonable application of *Strickland* or based on an unreasonable determination of the facts in light of the evidence presented. Ground Five therefore does not warrant relief.

---

[2] Notably, Mr. Walters' assertion that the jurors realized "MO" stood for "modus operandi" and therefore concluded that he was involved in criminal activities after his counsel said "that was the MO" is mere speculation.

<u>Ground Six: Trial Counsel Rendered Ineffective Assistance by Failing to Request a
Jury Instruction on the Lesser Included Offense of Second Degree Felony Murder</u>

Mr. Walters next contends that his defense counsel was ineffective by failing
to request a jury instruction on second-degree felony murder after arguing that Mr.
Walters was not present during the robbery. Doc. 1 at 10–11. Mr. Walters argues
that such an instruction was appropriate because the evidence showed that the
murder may have been committed by someone who had not participated in the
robbery. *Id.* at 10. Mr. Walters asserts that the failure to request this instruction
amounted to a violation of his Fifth, Sixth, and Fourteenth Amendment rights. *Id.*

This claim was raised in the ninth ground for relief in Mr. Walters' amended
Rule 3.850 motion before the post-conviction court. Doc. 14-5 at 207–09. In denying
the claim, the post-conviction court determined that defense counsel was not
deficient in failing to request an instruction on second-degree felony murder because
the instruction was not appropriate under Florida law. Doc. 14-6 at 21–22. The post-
conviction court explained that second-degree felony murder is an appropriate lesser-
included offense when a homicide is committed by a *non-principal* to the crime. *Id.* at
22. But if Mr. Walters acted in the armed robbery, it was as a principal. *Id.* The court
also found Mr. Walter's argument that the homicide victim might have been killed
by a non-principal to the robbery was "speculative and unsupported by the record."
*Id.* The appellate court affirmed without a written opinion. Doc. 14-9 at 120.

In Florida, "[a] defendant is entitled, upon request, to a jury instruction on
any theory of defense the substantive evidence supports." *Rockerman v. State*, 773 So.

2d 602, 603 (Fla. 1st DCA 2000). And "second-degree felony murder . . . requires that the killing be done by a nonprincipal." *State v. Dene*, 533 So. 2d 265, 270 (Fla. 1988). Thus, an instruction on second-degree felony murder in Mr. Walters' case was justified only if there was evidence that a non-principal to the robbery killed the homicide victim.

Mr. Walters argues that there was evidence that showed "that other non participants to the crime may have fired the deadly shot or shots that killed Mr. Arnold Klotsch." Doc. 14-5 at 208. He states that Mr. Sampeur testified there were three shots fired, only the first of which Mr. Sampeur saw, and there was no evidence that the first shot killed the victim. *Id.* at 207. Mr. Walters opines that "[i]t's very logical that other good Samaritans may have been involved in attempting to thwart the robbery . . . [and] may have fired the deadly shot or shots that killed" the victim. *Id.* at 208.

The post-conviction court found no evidence at trial supported Mr. Walters' argument. Doc. 14-6 at 22. The record supports that determination. After Mr. Sampeur testified that he and Mr. Walters robbed the Albertson's liquor store and ran out of the store to where their getaway car was waiting behind the building, Mr. Sampeur testified to the following:

> A: Yeah. We came out right here and then I ran down the side of the building this way.
> Q: And who was behind you?
> A: Andrew Walters.
> . . .
> Q: Did you ever notice another car in the area while you were running down the side of that building?

24

A: Yes.

. . .

Q: Okay. Did you turn around to look at that car?

A: Yes.

. . .

Q: What did you see?

A: I seen Andrew like stand in the middle of the street, facing the car like -- pointing his gun like at the car.

Q: Did you hear or see anything else?

A: Then he shot it, he shot at it.

Q: How many shots did you actually see get fired?

A: One shot.

Q: What did you do after you saw that?

A: After that, I seen like the car had turned off; like tried to dodge out of the way of the gun, I guess.

Q: Show me where you saw this happening on this exhibit?

A: Like Andrew was like right here, so the car was like right here and then the -- when he shot it, it was like turned off a little bit, but it kept coming.

. . .

Q: Did you hear any other shots?

A: Yes.

Q: Where were you when you heard those?

A: I was like at the end of the building, like to the back.

. . .

Q: How many more shots did you hear?

A: Two.

Q: What did the car that was being shot at do?

A: It came around the corner and then it crashed into a pole.

. . .

Q: What happened after the last shot and that car crashed into that pole?

A: We got in the car and left.

Doc. 14-3 at 431−35.

This testimony was direct evidence of Mr. Walters firing the first shot and circumstantial evidence that he fired two more shots before the victim's car crashed into a pole. Mr. Walters provides no evidence to support his assertion that a "Good Samaritan" may have fired the second and third shots. Thus, because there was evidence showing that Mr. Walters was a principal to the robbery and shot at the

victim, and no evidence showing that a non-principal to the robbery shot at the victim, an instruction on second-degree felony murder was not warranted. Defense counsel therefore was not ineffective in failing to request the instruction.

Mr. Walters has failed to show that the post-conviction court's decision was an unreasonable application of *Strickland* or based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, Mr. Walters is not entitled to relief on Ground Six.

Ground Seven: Trial Counsel Rendered Ineffective Assistance by Failing to Object to an All-White Jury

In Ground Seven, Mr. Walters contends that defense counsel was ineffective by failing to timely object to the selection of an all-white jury before the jury was sworn, thereby failing to preserve defense counsel's prior objections to the striking of two Black individuals from the jury panel.[3] Doc. 1 at 11. Mr. Walters argues that because the jury consisted of only white individuals, "prejudice can be presumed" given that he is Black and the homicide victim, who was white, "was allegedly killed during the act of being a good Samaritan." *Id.* at 12. He therefore asserts that his Fifth, Sixth, and Fourteenth Amendment rights were violated. *Id.*

This claim was raised as the tenth ground for relief in Mr. Walters' amended Rule 3.850 motion before the post-conviction court. Doc. 14-5 at 209−12. In denying

---

[3] After the jury was sworn, defense counsel renewed his prior objections to the State's striking for cause of two Black members of the jury panel. He also objected to the "entire panel as not being a representative sample of the community in light of Mr. Walters' position." Doc. 14-3 at 10.

the claim, the post-conviction court determined Mr. Walters failed to demonstrate prejudice. Doc. 14-6 at 22–24. The court stated that "having an all-white jury try an African American defendant is not necessarily prejudicial for that fact alone." *Id.* at 23. The court further explained that Mr. Walters failed to demonstrate prejudice because he neither alleged nor demonstrated (and the record did not show) that any juror was actually biased against him. *Id.* at 23–24. The appellate court affirmed without a written opinion. Doc. 14-9 at 120.

The post-conviction court's determination that Mr. Walters failed to demonstrate prejudice under *Strickland* is supported by the record. Mr. Walters cannot show prejudice from counsel failing to timely object to the all-white jury because he has no constitutional right to a jury of any particular racial composition. *See Taylor v. Louisiana*, 419 U.S. 522, 538 (1975) (While "petit juries must be drawn from a source fairly representative of the community . . . [there is] no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population. Defendants are not entitled to a jury of any particular composition[.]"). Although there exists a Sixth Amendment right to "the presence of a fair cross-section of the community on venire panels," *United States v. Henderson*, 409 F.3d 1293, 1305 (11th Cir. 2005), Mr. Walters does not allege that the jury panel was not a fair-cross section of the community. He instead acknowledged that there were at least seven Black individuals on the jury panel. Doc. 14-5 at 211.

To the extent that Mr. Walters contends that some or all of the jurors were biased, he likewise fails to demonstrate prejudice. A criminal defendant has a

27

constitutional right to trial by an impartial jury. *See Irvin v. Dowd*, 366 U.S. 717, 722 (1961). "A party challenging a juror for cause must demonstrate that the juror in question exhibited actual bias by showing either an express admission of bias or facts demonstrating such a close connection to the present case that bias must be presumed." *United States v. Chandler*, 996 F.2d 1073, 1102 (11th Cir. 1993). To be entitled to post-conviction relief in state court when claiming that a juror was not impartial, the party must prove bias. "[W]here a postconviction motion alleges that trial counsel was ineffective for failing to raise or preserve a cause challenge, the defendant must demonstrate that a juror was actually biased." *Carratelli v. State*, 961 So. 2d 312, 324 (Fla. 2007).

Mr. Walters does not demonstrate that defense counsel had a basis to object to any juror as biased. Absent a showing of individual bias, counsel had no basis to strike a juror solely because he or she was of a different race than Mr. Walters. *See, e.g.*, *Sanchez v. Roden*, 753 F.3d 279, 292 n.7 (1st Cir. 2014) (citing *United States v. Walker*, 490 F.3d 1282, 1292 (11th Cir.2007) ("Exercising peremptory challenges against white jurors on account of their race violates *Batson* just as surely as does striking black jurors because of theirs."). Given that Mr. Walters has not established that any juror had actual bias, he fails to show prejudice resulting from defense counsel's failure to object to the jury's racial composition.

Accordingly, Mr. Walters fails to show that the post-conviction court's denial of this claim was an unreasonable application of clearly established federal law or

was based on an unreasonable determination of the facts. Mr. Walters is not entitled to relief on Ground Seven.[4]

Ground Eight: Trial Counsel Rendered Ineffective Assistance by Accepting the Jury Without Properly Preserving His Previous Objection to the State's Peremptory Strikes of Black Prospective Jurors

Next, Mr. Walters contends that defense counsel rendered ineffective assistance by failing to timely renew his objections to the State's striking of the same two Black prospective jurors mentioned above—Mr. Jackson and Ms. Ellis. Doc. 1 at 13. He alleges that, although defense counsel objected when the State moved to strike Mr. Jackson and Ms. Ellis, the State never offered race-neutral reasons to strike them. *Id.* Mr. Walters asserts that defense counsel should have renewed these objections before the jury was sworn in order to preserve the issue for appellate review. *Id.* Mr. Walters contends that if defense counsel had timely renewed the objections, the trial court would have been required to hold a *Neil* hearing to determine whether the removal of Mr. Jackson and Ms. Ellis "was racially discriminatory." *Id.*

---

[4] In support of Ground Seven, as well as Grounds Eight, Nine, Ten, Eleven, Twelve, Fourteen, and Fifteen, Mr. Walters contends that "if this Court cannot find that the Petitioner has satisfied *Strickland*'s prejudice component, the Petitioner asserts that the presumption of prejudice under *United States v. Cronic*, 466 U.S. 648, 659 (1984), should apply here." Doc. 1 at 12. In *Cronic*, the Supreme Court explained that "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable," and no specific showing of prejudice is required. *Cronic*, 466 U.S. at 659. The Court finds that this case is not the sort of rare case to which *Cronic* applies. The record in this case, particularly the transcript of the trial, shows that Mr. Walters' case was subject to a meaningful adversarial process. Prejudice is therefore not to be presumed.

This claim was raised as Mr. Walters' eleventh ground for relief in his amended Rule 3.850 motion before the post-conviction court. Doc 14-5 at 213–15. In denying the claim, the post-conviction court determined that Mr. Walters failed to demonstrate prejudice from defense counsel's failure to timely renew the objections. Doc. 14-6 at 24–29. The court explained that "any renewed objection by counsel would have been without merit" because "the State offered a race-neutral reason which the court found to be a valid basis for the strikes." *Id.* at 28. The appellate court affirmed without a written opinion. Doc. 14-9 at 120.

The record supports the post-conviction court's findings. As this Court already discussed above, race-neutral reasons were provided in support of striking both Mr. Jackson and Ms. Ellis. Mr. Jackson felt his son was treated unfairly by the criminal justice system, and Ms. Ellis had a brother serving a 20-year prison sentence and would experience financial hardship if required to serve on the jury. *See Murphy*, 416 F.3d at 433; *Gold*, 22 F. App'x at 723.

Mr. Walters has not shown prejudice as required by *Strickland*, as there is no reasonable probability that the outcome would have been different had defense counsel timely renewed his objections. He has failed to show the post-conviction court's decision was an unreasonable application of clearly established federal law or based on an unreasonable determination of the facts. Ground Eight warrants no relief.

Ground Nine: Trial Counsel Rendered Ineffective Assistance by Failing to Request a Limiting or Cautionary Instruction Regarding the Testimony of the Victim's Wife

In Ground Nine, Mr. Walters contends that defense counsel was ineffective by failing "to request a limited or cautionary jury instruction regarding the victim's wife's irrelevant and highly prejudicial testimony." Doc. 1 at 15.[5] He alleges that the victim's wife, Mrs. Klotsch, was crying during her testimony, such that "her testimony only had served to inflame the emotions of the jury." *Id.* Mr. Walters therefore avers that his Fifth, Sixth, and Fourteenth Amendment rights were violated. *Id.*

At trial, the State purportedly notified defense counsel that Mrs. Klotsch would testify that her husband was picking her up from her job at Albertson's grocery store when Mr. Walters and Mr. Sampeur allegedly robbed the attached Albertson's liquor store. Doc. 14-3 at 19. Defense counsel thereafter moved to exclude Mrs. Klotsch's testimony. *Id.* at 19–20. Defense counsel explained that Mrs. Klotsch's testimony was not needed because the detective who investigated the homicide could testify to the reason the victim was in the vicinity of the robbery. *Id.* at 20. Defense counsel argued the probative value of the information Mrs. Klotsch could provide was outweighed by the possibility she would become emotional and cry during her testimony. *Id.* Defense counsel also objected to any conversation

---

[5] In his state amended Rule 3.850 motion, Mr. Walters alleged the limiting instruction should have stated, "Mrs. Denise Klotsch's testimony had no relevance as to the facts of the case, and its prejudicial effect should not influence the jury's decision-making process." (Doc. 14-5, Ex. 13(i) at 213).

between Mrs. Klotsch and her husband about picking her up from her job at

Albertson's as hearsay. The trial judge ultimately stated, "I'm going to deny the

Defense's objection; however, I will hear it at the time they ask the question." *Id.*

Mrs. Klotsch's testimony consisted of the following brief exchange:

Q: Ms. Klotsch, were you married to Arnold Klotsch?
A: Yes, I was.
Q: How long were you married to him?
A: Almost 25 years at the time.
Q: Where were you working on March 1, 2002?
A: That was a Saturday. I was at Albertson's Grocery store.
Q: And is that the Albertson's at 8701 West Hillsborough Ave?
A: Yes, it is.
Q: What was your job there?
A: Cashier.
Q: In the grocery store part of it?
A: Yes.
Q: What shift were you working on that night?
A: That night I was working from 7:00 p.m. 'til 10:00 p.m.
Q: How did you get to work that day?
A: It was Saturday so my husband wasn't working at his regular job, so he
took me to Albertson's and then he picked me up at 10:00 p.m. That was the
arrangement.
Q: I understand. What time did you get there?
A: 7:00.
Q: And who was going to pick you up?
A: Arnold.
Q: Had you arranged with him to tell him to be there at 10:00?
A: Oh yes, he was always there promptly.
Q: Was that your regular schedule?
A: Yes.

Doc. 14-3 at 87−88. Defense counsel neither objected to the testimony nor cross-

examined Mrs. Klotsch. *Id.*

Mr. Walters' present claim concerning the above testimony was presented in a

somewhat similar fashion in the twelfth ground for relief in his amended Rule 3.850

motion before the post-conviction court. Doc. 14-5 at 215−18. In denying the claim, the post-conviction court stated that Mrs. Klotsch's testimony was "extremely limited in nature." Doc. 14-6 at 29. The court further noted that the record did not reflect that Mrs. Klotsch's testimony was "at all emotional." *Id.* at 30. The appellate court affirmed without a written opinion. Doc. 14-9 at 120.

The post-conviction court reasonably applied *Strickland*'s performance and prejudice prongs. The post-conviction court answered the question of what would have occurred under state law if defense counsel had sought a limiting instruction: the request would have been denied. Deference must be afforded to the state court's determination that a request for a limiting instruction would have been denied. *See, e.g.*, *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1354–55 (11th Cir. 2005) (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997) ("It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'"). Because a request by defense counsel for a limiting instruction on Mrs. Klotsch's testimony would have been denied, Mr. Walters cannot show prejudice or deficient performance.

Additionally, the Court notes that Mr. Walters appears to argue that the post-conviction court's denial of this claim was based on an unreasonable determination that Mrs. Klotsch's testimony was not emotional. Doc. 1 at 15. Mr. Walters alleges that Mrs. Klotsch cried during her testimony, thereby inflaming the emotions of the jury. *Id.* However, during the post-conviction proceedings, Mr. Walters never alleged that Mrs. Klotsch actually cried while giving her testimony. Doc. 14-5 at 215−18;

Doc. 14-9 at 31–33. Thus, this claim has not been exhausted because it was never fairly presented it to the state courts. *See Picard v. Connor*, 404 U.S. 270 (1971) (exhaustion is achieved by giving the state courts an opportunity to consider the petitioner's legal theory and the factual basis for that theory).

But even if he exhausted this claim, Mr. Walters has failed to carry his burden to overcome the factual findings of the post-conviction court by clear and convincing evidence. 28 U.S.C. § 2254(e). Mr. Walters presents no evidence that Mrs. Klotsch cried while testifying. And even if Mrs. Klotsch was crying, there is nothing in the record showing the post-conviction court unreasonably determined that there were no "emotional outbursts" during Mrs. Klotsch's testimony. A review of her very brief testimony gives no indication of any crying or emotional outbursts. Doc. 14-3 at 87–88. And considering the other evidence presented at trial, including eyewitness testimony, the Court finds that there is no reasonable probability of a different outcome had the jury received a limiting or clarifying instruction concerning Mrs. Klotsch's testimony.

Mr. Walters has failed to show that the post-conviction court unreasonably applied the *Strickland* standard or unreasonably determined the facts by rejecting this claim. Accordingly, Ground Nine warrants no relief.

Ground Ten: Trial Counsel Rendered Ineffective Assistance by Failing to Secure a Clear and Final Ruling Regarding the Victim's Wife's Irrelevant and Prejudicial Testimony

Mr. Walters next contends that defense counsel rendered ineffective assistance by failing "to secure a clear and final ruling on the victim's wife's irrelevant and

prejudicial testimony." Doc. 1 at 16. He notes that defense counsel objected to the State's plan to call Mrs. Klotsch to testify and that the trial judge overruled the objection but stated he would hear a renewed objection during Mrs. Klotsch's testimony. *Id.* Mr. Walters contends that defense counsel "unexplainably" did not make a renewed objection. *Id.* at 16–17. According to Mr. Walters, had defense counsel renewed the objection, Mrs. Klotsch "would have been prevented from testifying due to the irrelevant and more importantly, the prejudicial nature against the Petitioner." *Id.* at 17. Mr. Walters argues that her testimony was irrelevant and prejudicial because she was "visibly shaken" in front of the jury, and the jury heard testimony from "a grieving widow." *Id.*

Mr. Walter brought this claim before the post-conviction court in the thirteenth ground for relief in his amended Rule 3.850 motion. Doc. 14-5 at 219–21. In denying the claim, the post-conviction court explained that defense counsel's initial objection was based upon a belief that Mrs. Klotsch would lose her composure on the stand; it was not based on the substance of her testimony. Doc. 14-6 at 31. And as the post-conviction court noted, "nothing in the record indicates that Mrs. Klotsch lost her composure when she took the stand." *Id.* at 32. Accordingly, the post-conviction court determined that defense counsel had no grounds to renew the initial objection. *Id.* The appellate court affirmed without a written opinion. Doc. 14-9 at 120.

As in Ground Nine, the post-conviction court answered the question of what would have happened under state law had defense counsel renewed his objection to

exclude Mrs. Klotsch' testimony. Deference must be afforded to the state court's determination that the objection would have been denied. *Herring*, 397 F.3d at 1354–55. As the post-conviction court stated, defense counsel argued that the probative value of Mrs. Klotsch's testimony would be outweighed by the potential prejudice "should she breakdown and cry." Doc. 14-3 at 20. Because nothing in the record suggests that Mrs. Klotsch did "breakdown and cry," defense counsel had no basis to renew the objection.[6] A renewed objection would have been denied, meaning that Mr. Walters cannot show prejudice or deficient performance. Moreover, as noted above, there is no reasonable probability of a different outcome had Mrs. Klotsch not testified.

Mr. Walters has failed to meet his burden of proving that the post-conviction court unreasonably applied *Strickland* or unreasonably determined the facts by rejecting this ground. Accordingly, Mr. Walters is not entitled to relief on Ground Ten.

Ground Eleven: Trial Counsel Rendered Ineffective Assistance By Failing to Investigate and Develop an Alternative Suspect Defense

Turning to Ground Eleven, Mr. Walters contends that defense counsel offered ineffective assistance by failing to investigate and argue an "alternative suspect defense" to establish a plausible defense. Doc. 1 at 18. Specifically, he asserts that

---

[6] And, as discussed in the Court's analysis of Ground Nine, Mr. Walters has failed his burden to overcome, by clear and convincing evidence, the post-conviction court's factual finding that Mrs. Klotsch did not lose her composure or have an "emotional outburst" while testifying.

36

defense counsel should have investigated and offered James Walton—whom Mr. Sampeur identified as the getaway driver—as the individual who shot the victim. *Id.* He argues it was "inexcusable" for defense counsel to not pursue a defense that Mr. Walton "was the most likely person to have committed the murder[.]" *Id.* at 19. If not Mr. Walton, Mr. Walker asserts that Johnny Knight—a man with whom Mr. Walters and Mr. Sampuer were associated—or some other individual should have been named as the possible shooter. *Id.*; Doc. 14-3 at 395. According to Mr. Walters, this failure was not a "reasoned strategic judgment," but the result of defense counsel's "inattention." Doc. 1 at 19. Mr. Walters asserts that this left him without a viable defense, in violation of his Fifth, Sixth, and Fourteenth Amendment rights. *Id.* at 18.

This claim was raised as the third ground for relief in Mr. Walters' amended Rule 3.850 motion before the post-conviction court. Doc. 14-5 at 188−92. Following a bifurcated evidentiary hearing, the post-conviction court concluded that Mr. Walters failed to demonstrate deficient performance and denied his claim. Doc. 14-7, 13 at 13−14. The court found defense counsel's hearing testimony to be credible and determined that "his decision not to pursue a defense strategy based on developing an alternative shooter theory" was "reasonable trial strategy." *Id.* at 14. Specifically, the court found the strategy reasonable because (1) there were several witnesses willing to testify that they heard Mr. Walters make inculpatory statements about his involvement in the robbery and homicide, and (2) Mr. Sampeur testified that he witnessed Mr. Walters shoot at the victim. *Id.* at 15.

The post-conviction court also found defense counsel's decision—which was made after consulting with Mr. Walter's on several occasions—to attack the weakness of the State's case to be reasonable trial strategy. *Id.* at 14. Defense counsel attacked the lack of any physical evidence showing Mr. Walters was involved in the robbery and murder, the incentive that Mr. Sampeur had to testify untruthfully about Mr. Walters' involvement in the offenses, the inconsistent and unreliable testimony of other State witnesses, and the failure by law enforcement to investigate Mr. Walton and Mr. Knight. *Id.* Finally, the postconviction court determined Mr. Walters showed no prejudice from defense counsel's decision not to pursue an alternative shooter theory because it was likely that Mr. Walters would still would have been found guilty as a principal to the offenses. *Id.* at 15. The appellate court affirmed without a written opinion. Doc. 14-9 at 120.

After review of the record and applicable law, the Court concludes that Mr. Walters is not entitled to relief on this claim. The post-conviction court's conclusion that there was no showing of deficient performance was not an unreasonable application of the law or determination of the facts. The Court notes that "[i]t is especially difficult to succeed with an ineffective assistance claim questioning the strategic decisions of trial counsel who were informed of the available evidence." *Nance v. Warden Ga. Diagnostic Prison*, 922 F.3d 1298, 1302 (11th Cir. 2019). At the evidentiary hearing, defense counsel testified that he determined attacking the weaknesses in the State's case to be the best approach. Doc. 14-8 at 98. And defense

counsel stated that he was not aware of any evidence, other than what was presented at trial, suggesting that Mr. Walton or Mr. Knight was the shooter. *Id.* at 105.

Also at the evidentiary hearing, Mr. Walters testified that the only evidence he knew that suggested Mr. Walton was the shooter was Mr. Sampeur's testimony that Mr. Walton "was there on the night and he was a participant to the crimes." *Id.* at 46. He conceded that defense counsel did, in fact, argue at trial—although not "fully"—that another person was the shooter. *Id.* at 47. The record supports this, as defense counsel argued at trial that (1) no physical evidence established that Mr. Walters was the shooter, and (2) the shooter could have been Mr. Sampeur, Mr. Knight, or Mr. Walton. Doc. 14-3 at 535−36.

The post-conviction court ultimately found that defense counsel's decision not to pursue an alternate shooter theory was a reasonable strategic decision. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" *Strickland*, 466 U.S. at 690. Thus, Mr. Walters cannot show deficient performance.

Moreover, even if defense counsel was deficient in his investigation of an alternate shooter, Mr. Walters has failed to demonstrate prejudice. A habeas petitioner alleging that his counsel failed to adequately investigate must show with specificity what information would have been obtained in a thorough investigation. *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1334 (11th Cir. 2012). During the evidentiary hearing, Mr. Walters stated that witnesses' trial testimony showed that Mr. Walton may have been the shooter. Doc. 14-8 at 46, 48−49. Mr. Walters

has never specified what information defense counsel would have obtained had he investigated whether Mr. Walton or another individual was the shooter. Thus, it is pure speculation whether any information beneficial to Mr. Walters' defense would have been obtained had defense counsel conducted such an investigation.

The post-conviction court's denial of this claim was not an unreasonable application of *Strickland* and did not constitute an unreasonable determination of the facts in light of the evidence presented. Therefore, Mr. Walters is not entitled to relief on Ground Eleven.

<u>Ground Twelve: Trial Counsel Rendered Ineffective Assistance by Failing to Challenge the Sufficiency of the Evidence Through an Adequate Motion for a Judgment of Acquittal and an Adequate Motion for a New Trial</u>

Mr. Walters next contends that defense counsel was ineffective by failing to adequately move for a judgment of acquittal and for a new trial. Doc. 1 at 20–22. He argues that, because insufficient evidence supported the jury's guilty verdict, had defense counsel presented adequate motions for judgment of acquittal and for a new trial supported with facts, the motions would have been granted. *Id.* at 20. Mr. Walters therefore claims that his Fifth, Sixth, and Fourteenth Amendment rights have been violated. *Id.*

At trial, defense counsel moved for a judgment of acquittal after the State rested its case. Doc. 14-3 at 486. In doing so, defense counsel stated that "[t]he State's failed to prove a prima facie case of guilt against the defendant," but made no argument in support of this statement. *Id.* The trial court denied the motion. *Id.*

After trial, defense counsel filed a motion for a new trial. Doc. 14-2 at 227–28. That motion was also denied. *Id.* at 240.

Mr. Walters raised this claim before the post-conviction court as his sixth ground for relief in his amended Rule 3.850 motion. Doc. 14-5 at 197–201. Following the evidentiary hearing, the post-conviction court denied the claim and explained that Mr. Walters had failed to demonstrate prejudice or deficient performance. Doc. 14-7 at 16–24. The post-conviction court noted that, during the evidentiary hearing, defense counsel testified to his belief that there was no basis for a judgment of acquittal or a new trial, and had he believed there were facts that supported either a judgment of acquittal or a new trial, he would have alleged them. *Id.* at 20–24. The court also found that Mr. Walters had not shown any prejudice, as he had failed to establish that any motion for judgment of acquittal or for a new trial would have been successful. *Id.* at 24. The appellate court affirmed without a written opinion. Doc. 14-9 at 120.

In Florida, a court should grant a motion for judgment of acquittal only if "the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law." *Lynch v. State*, 293 So. 2d 44, 45 (Fla. 1974). Importantly, determining whether there is sufficient evidence to overcome a motion for judgment of acquittal is a matter of state law solely within the province of the state court. *See, e.g.*, *Bucklon v. Crosby*, No. 8:04-cv-2302-T-17TGW, 2006 WL 2990449, at *3 (M.D. Fla. Oct. 19, 2006). Although Mr. Walters contends that the State failed to present sufficient evidence to support his convictions and that all

41

evidence presented against him was circumstantial or inadmissible hearsay, the post-conviction court found that the State had sufficient evidence to overcome a judgment of acquittal. Doc. 14-7 at 23. To be sure, Mr. Sampeur offered eyewitness testimony linking Mr. Walters to the robbery and murder, and other witnesses testified that Mr. Walters made statements implicating himself as the shooter. *See id.* at 24.

The state post-conviction court therefore answered the question of what would have happened had counsel supported his motion for judgment of acquittal with the facts and argument that Mr. Walters contends should have presented been presented by defense counsel: the motion would have been denied. Consequently, Mr. Walters has failed to establish deficient performance and prejudice. *See Brewster v. Hetzel*, 913 F.3d 1042, 1056 (11th Cir. 2019) ("Defense counsel, of course, need not make meritless motions or lodge futile objections."); *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005). Because a more thorough and detailed motion for judgment of acquittal would not have been granted, this claim warrants no relief.

Similarly, Mr. Walter's claim that defense counsel filed an inadequate motion for a new trial warrants no relief. Under Florida law, a motion for new trial provides a "safety valve" when technically sufficient evidence proves the criminal offense, but the weight of the evidence does not appear to support the verdict. *See State v. Shearod*, 992 So. 2d 900, 904 (Fla. 2d DCA 2008). The weight of the evidence standard used to evaluate a motion for a new trial tests whether a greater amount of credible evidence supports one side of an issue or the other. *Tibbs v. State*, 397 So. 2d 1120, 1123 (Fla. 1981); *Geibel v. State*, 817 So. 2d 1042, 1044 (Fla. 2d DCA 2002).

Here, as the post-conviction court noted, the testimony and evidence presented at trial was sufficient to support Mr. Walters' conviction. Doc. 14-7 at 24. And the record demonstrates the greater amount of credible evidence, including witness testimony, supported the verdict. As such, the post-conviction court found that Mr. Walters failed to demonstrate a reasonable probability that a motion for a new trial supported by facts from his trial would have been granted. *Id.* This Court agrees that Mr. Walters therefore did not show that he was prejudiced by defense counsel's failure to present an "adequate" motion for a new trial. *Id.*

The Court finds that the post-conviction court's adjudication of this claim did not involve an unreasonable application of clearly established federal law and was not based on an unreasonable determination of the facts in light of the evidence presented. Mr. Walters has failed to meet his burden of proving that the post-conviction court unreasonably applied *Strickland* or unreasonably determined the facts by rejecting this ground. Accordingly, Ground Twelve warrants no relief.

Ground Thirteen: Trial Counsel Rendered Ineffective Assistance by Interfering with the Petitioner's Right to Testify on His Own Behalf

Mr. Walters further contends that defense counsel rendered ineffective assistance by incorrectly advising him that the specific nature of his prior offenses would be revealed if he testified on his own behalf. Doc. 1 at 22−23. He states that defense counsel incorrectly told him that his prior conviction for aggravated battery on a pregnant female "would be frowned upon by [the] predominant female jury." *Id.* at 22. Mr. Walters asserts that "had he been properly advised[,] he would have

testified that he was not at the scene of the crime and that the statements the State's witnesses alleged he made in reference to the crime were misinterpreted and fraudulent as he only relayed what he had heard from Mr. Sampeur." *Id.*

This claim was raised as the eighth ground for relief in Mr. Walters' amended Rule 3.850 motion before the post-conviction court. Doc. 14-5 at 205−06. Following the evidentiary hearing, the post-conviction court concluded that Mr. Walters failed to show that his counsel's performance was deficient and denied this claim. Doc. 14-7, at 25−30.

During the evidentiary hearing, Mr. Walters testified that defense counsel told him that, if he testified, the jury would consider the specific crimes of which he had previously been convicted. Doc. 14-8 at 56. Mr. Walters further testified that defense counsel had expressed concern over this possibility because Mr. Walters had been convicted of aggravated battery on a pregnant woman and the present jury consisted of many female jurors. *Id.* at 57. Defense counsel then testified that, although he did not recall that specific conversation with Mr. Walters, his standard practice was to first talk to the prosecutor then explain to his client that the *number* of convictions would be revealed at trial, but not the specific nature of the convictions unless the client disputed the number of convictions on the stand. *Id.* at 107−08, 131−35. Defense counsel testified that he never had gone to trial without first having that conversation with a client and that he never told a client "anything other than they can only talk about the number [of prior convictions] unless you dispute it or you give a wrong number[.]" *Id.* at 923−24.

44

The post-conviction court ultimately found defense counsel's testimony more credible than Mr. Walters' testimony. Doc. 14-7 at 30. The court also found credible defense counsel's testimony that "he was well aware of the law concerning what a jury would be made aware of in regard to a defendant's prior convictions" and that he would not have deviated from his standard practice of informing clients of what a jury would learn about prior convictions if a client chose to testify. *Id.*[7]

The post-conviction court's credibility determinations are "entitled to the same presumption accorded findings of fact under 28 U.S.C. § 2254(d)." *Devier v. Zant*, 3 F.3d 1445, 1456 (11th Cir. 1993). Accordingly, such determinations are entitled to a presumption of correctness. *See* 28 U.S.C. § 2254(e)(1). And Mr. Walters fails to overcome by clear and convincing evidence this presumption of correctness afforded to the state post-conviction court's determination that defense counsel's testimony was more credible than that of Mr. Walters. *See Abonza-Torres v. Sec'y, Dep't of Corr.*, No. 19-13653-J, 2020 WL 13564082, at *1 (11th Cir. Sept. 3, 2020). Considering the post-conviction court's findings, which implicitly include a finding that defense counsel never told Mr. Walters that the nature of his prior convictions would be revealed if he testified, Mr. Walters cannot demonstrate that counsel was ineffective.

---

[7] Although defense counsel's memory of the case had faded over the ten years between the trial and the evidentiary hearing, his testimony of his standard practice "creates an inference which can be considered by the trier of fact without corroborative evidence." *State v. Avila*, 43 So. 3d 936, 938 (Fla. 3d DCA 2010); *see also, Strickland v. Sec'y, Fla. Dep't of Corr.*, No. 3:15-cv-1251-J-32JBT, 2018 WL 4407108, at *9 (M.D. Fla. Sept. 17, 2018) (citing *Dasher v. Att'y Gen., Fla.*, 574 F.3d 1310, 1314 (11th Cir. 2009)).

Ultimately, Mr. Walters has failed to show that the post-conviction court's determination of this claim involved an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts. Ground Thirteen therefore warrants no relief.

Ground Fourteen: Trial Counsel Rendered Ineffective Assistance by Failing to Request a Limiting Instruction Concerning the Co-Defendant Testimony and Guilty Plea

In Ground Fourteen, Mr. Walters appears to contend that defense counsel rendered ineffective assistance by failing to request a limiting instruction clarifying that Mr. Sampeur "entered a guilty plea in exchange for his testimony against [Mr. Walters]." Doc. 1 at 24. Mr. Walters asserts that a limiting instruction was needed to explain that "Mr. Sampeur's testimony should be considered for his credibility and should not be considered in determining [Mr. Walters'] guilt." *Id.* He argues that, had defense counsel successfully requested such an instruction, "the jury would have been more apt to discredit [Mr. Sampeur's] testimony and focus solely on the evidence presented." *Id.* Mr. Walters therefore asserts that his Fifth, Sixth, and Fourteenth Amendment rights were violated. *Id.*

Mr. Walters raised this claim as his sixteenth ground for relief in his amended Rule 3.850 motion before the post-conviction court. Doc. 14-5 at 226−28. The post-conviction court denied the claim after the evidentiary hearing. Doc. 14-7 at 30−35. The court explained that defense counsel credibly testified at the evidentiary hearing that "his trial strategy concerning Mr. Sampeur's testimony was to attack the witness's credibility based on the fact that he took a plea deal in exchange for

providing testimony against [Mr. Walters]." *Id.* at 35. The court also noted that both Mr. Walters and defense counsel testified at the evidentiary hearing that "at no time did the State argue or imply that the jury should find [Mr. Walters] guilty merely based upon co-defendant Sampeur's guilty plea." *Id.* Accordingly, the post-conviction court determined that defense counsel's decision not to request Mr. Walters' desired limiting instruction did not constitute deficient performance. *Id.* The appellate court affirmed without a written opinion. Doc. 14-9 at 120.

Here, to the extent that Mr. Walters contends that defense counsel was ineffective in failing to request a limiting instruction advising the jury that it should only consider Mr. Sampeur's testimony to determine Mr. Sampeur's credibility and not Mr. Walters' guilt, the claim is meritless. Mr. Sampeur's eyewitness testimony regarding the robbery and homicide was relevant to Mr. Walters' guilt and, therefore, admissible. *See Williams v. State*, 110 So. 2d 654, 658 (Fla. 1959) ("[A]ny fact relevant to prove a fact in issue is admissible into evidence unless its admissibility is precluded by some specific rule of exclusion.").

Moreover, Mr. Walters fails to show deficient performance. Defense counsel testified at the evidentiary hearing before the post-conviction court that he had "never heard of" such a limiting instruction and did not know if such a limiting instruction was even available at the time of trial in 2007. Doc. 14-8 at 136. Mr. Walters' assertion that the trial court would have agreed to give the limiting instruction is purely speculative.

And even if defense counsel was deficient in failing to request the limiting instruction, Mr. Walters cannot show prejudice. "A defendant is entitled to have the question of his guilt determined upon the evidence against him, not on whether a Government witness or co-defendant has plead guilty to the same charge." *Babb v. United States*, 218 F.2d 538, 542 (5th Cir. 1955).[8] In evaluating the impact of a witness' guilty plea, a court must consider several factors including:

> whether there was a proper purpose in introducing the fact of the guilty plea, whether the plea was improperly emphasized or used as substantive evidence of guilt, whether the introduction of the plea was invited by the defense counsel, whether an objection was entered or an instruction requested, whether the defendant's failure to object could have been the result of tactical considerations, and whether, in light of all the evidence, the failure to give an instruction was harmless beyond a reasonable doubt.

*United States v. Fleetwood*, 528 F.2d 528, 532 (5th Cir. 1976) (quotation omitted).

There was a proper purpose in introducing Mr. Sampeur's guilty plea: to assess Mr. Sampeur's credibility. Defense counsel used the guilty plea to the defense's advantage by extensively cross-examining Mr. Sampeur on the circumstances of his guilty plea and the benefits he was receiving from the State in exchange for testifying against Mr. Walters. And, as defense counsel testified during the evidentiary hearing, the plea was not admitted for an improper purpose because the State never argued or implied that Mr. Sampeur's guilty plea was evidence of Mr. Walters' guilt.

---

[8] In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as precedent decisions of the former Fifth Circuit rendered before October 1, 1981.

Moreover, Mr. Sampeur's testimony consisted of more than just the fact that he had entered a guilty plea. Rather, the majority of his testimony was about committing the robbery with Mr. Walters. Because Mr. Sampeur testified to his own involvement in the robbery, the jury would have learned of Mr. Sampeur's criminal conduct even if his guilty plea was never mentioned. And setting aside Mr. Sampeur's guilty plea, there was sufficient evidence to support Mr. Walter's conviction. This evidence included Mr. Sampeur's eyewitness testimony and the testimony of other witnesses who heard Mr. Walters' incriminating statements. Finally, it is important to note that the trial court *did* instruct the jury that, when weighing the evidence, it should consider whether a "witness been offered or received any money, preferred treatment *or other benefit* in order to get the witness to testify" Doc. 14-3 at 543 (emphasis added). Ultimately, Mr. Walters cannot prejudice, as he has not shown a reasonable probability of a different outcome had the limiting instruction been read to the jury.

The Court therefore finds that the post-conviction court's denial of this claim was neither an unreasonable application of *Strickland* nor based on an unreasonable determination of the facts. Ground Fourteen warrants no relief.

Ground Fifteen: Trial Counsel Rendered Ineffective Assistance by Acquiescing to the Trial Court's Denial of the Jury's Request to Review the Testimony of a Witness

Next, Mr. Walters contends that defense counsel rendered ineffective assistance by not arguing that the jury should have been given a transcript of witness Danielle Livingston's testimony court during deliberations. Doc. 1. at 25–26. During

deliberations, the jury sent a note to the trial court asking if it could "get a transcript" of Ms. Livingston's trial testimony. Doc. 14-3 at 560. The prosecutor, defense counsel, and trial court agreed that the jury should not be given a transcript, so the trial court sent a note to the jury stating, "No. Please rely on your own recollection of the testimony." *Id.* Mr. Walters claims that defense counsel should have first asked the trial court to find out which portions of Ms. Livingston's testimony the jury wanted to review and next asked the trial court to read those portions of her testimony to the jury. Doc. 1 at 25. By failing to do so, Mr. Walters argues that defense counsel deprived him of the opportunity to have the "jury substantiate the incredibility of [Ms. Livingston's] testimony," which Mr. Walters contends was false and full of inconsistencies. *Id.* at 26. He therefore states that his Fifth, Sixth, and Fourteenth Amendment rights were violated. *Id.* at 25.

This claim was raised before the post-conviction court as the eighteenth ground of Mr. Walters' amended Rule 3.850 motion. Doc. 14-5 at 232−34. Following the evidentiary hearing, the post-conviction court denied the claim. Doc. 14-7 at 35−43. Finding that defense counsel testified credibly at the evidentiary hearing, the post-conviction court stated that defense counsel made a reasonable strategic decision to not allow the jury to hear Ms. Livingston's "very damaging" testimony for a second time. *Id.* at 42 (quoting defense counsel). The court also noted that there was no evidence presented concerning why the jury wanted to review the transcripts, meaning that there was no indication that the jury was intending to only read exculpatory portions of Ms. Livingston's testimony. *Id.* The post-conviction

court therefore found that there was no showing of prejudice or deficient

performance. *Id.* The appellate court affirmed without a written opinion. Doc. 14-9

at 120.

The Court agrees with the post-conviction court's analysis and determination.

At the time of Mr. Walters' trial in 2007, Florida Rule of Criminal Procedure

3.410(b) provided:

> After the jurors have retired to consider their verdict, *if they request additional*
> *instructions or to have any testimony read to them* they shall be conducted into the
> courtroom by the officer who has them in charge and the court may give them
> the additional instructions or may order the testimony read to them. The
> instructions shall be given and the testimony read only after notice to the
> prosecuting attorney and to counsel for the defendant.

(emphasis added). The jury did not request that Ms. Livingston's testimony be read

to it; the jury instead asked for a transcript of her testimony. At the time of Mr.

Walters' trial, there was "no rule of criminal procedure providing that a jury may

view a transcript of the proceedings." *Hendricks v. State*, 34 So. 3d 819, 828 (Fla. 1st

DCA 2010).

And had the jury requested a reading of Ms. Livingston's testimony, "[a] trial

court's discretion over whether to allow a read-back of testimony [was] wide" in

2007. *Id*. at 828−29; *see also, Harris v. Sec'y, Fla. Dep't of Corr.*, 558 F. App'x 979, 983

(11th Cir. 2014) ("At the time of Harris's [2007] trial, trial courts exercised broad

discretion in determining whether to read back a witness's testimony to the jury.").

Here, when the trial judge read the jury's question to the prosecutor and defense

counsel, he stated, "what I would normally write on this, with the consent of the

State and Defense, is, 'Please rely on your -- your own recollection regarding the testimony.'" Doc. 14-3 at 560. Whether the trial judge would have even permitted a read-back of Ms. Livingston's testimony is therefore speculative.

Even if the Court were to assume that the trial judge would have permitted a read-back, Mr. Walters fails to demonstrate that there is a reasonable probability of a different outcome. Mr. Walters' assertion that the jury was "seeking further evaluation" and "clarification" of Ms. Livingston's credibility is merely speculative. As the post-conviction court noted, there is nothing in the record indicating why the jury requested a transcript of Ms. Livingston's testimony. Mere speculation that counsel's error affected the outcome of the proceeding is insufficient to warrant relief. *Strickland*, 466 U.S. at 693; *Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001). Accordingly, Mr. Walters has not shown prejudice.

Mr. Walters likewise fails to show deficient performance. During the evidentiary hearing before the post-conviction court, defense counsel testified that he made the strategic decision to not request a read-back of Ms. Livingston's "very damaging" testimony to the jury. Doc. 14-8 at 112−14. He explained that Ms. Livingston had testified that, soon after the robbery and murder occurred, she saw Mr. Walters with a gun and with a "gray hoodie" similar to the one worn by the man in the footage of the robbery. *Id.* at 113−14. Defense counsel also noted that Ms. Livingston said she had witnessed Mr. Walters giving away money and heard him make incriminating statements, including a statement to the effect of Mr. Walters

having "offed the cracker, [and] now he's ketchup." *Id.* at 112, 141. These were all accurate representations of Ms. Livingston's trial testimony. *See* Doc. 14-3 at 219−25.

Although Mr. Walters argues Ms. Livingston gave some testimony helpful to him during cross-examination, Doc. 1 at 26, that does not establish that the jury was exclusively interested in hearing those portions of her testimony. As the post-conviction court noted, nothing in the record explains why the jury wanted a transcript of Ms. Livingston's testimony. Similarly, the fact that some of Ms. Livingston's statements were arguably helpful to Mr. Walters' case does not change the fact that defense counsel was reasonably concerned that the jury would hear Ms. Livingston's "very damaging" testimony again. Indeed, Ms. Livingston's testimony overwhelmingly damaging to Mr. Walters' defense. Doc. 14-3 at 219−34 (discussing seeing Mr. Walters with a gun and hearing him discuss killing a "good Samaritan" on the day of the homicide). Thus, defense counsel's strategic decision to not request a read-back of Ms. Livingston's testimony was not patently unreasonable and therefore not deficient performance.

Ultimately, the post-conviction court's denial of this claim was neither an unreasonable application of *Strickland* nor based on an unreasonable determination of the facts. Mr. Walters is not entitled to relief on Ground Fifteen.

Ground Sixteen: Trial Counsel Provided Ineffective Assistance Based on the Cumulative Effect of His Deficient Performance

In Ground Sixteen, Mr. Walters contends that defense counsel rendered ineffective assistance of counsel based on the cumulative effect of his "multiple

errors" alleged in Grounds Three through Fifteen. Doc. 1. at 27. Accordingly, Mr.
Walters asserts that his trial was fundamentally unfair and his Fifth, Sixth, and
Fourteenth Amendment rights were violated. *Id.*

Mr. Walters raised this claim as his nineteenth ground for relief in his
amended Rule 3.850 motion before the post-conviction court. Doc. 14-5 at 234−37.
The post-conviction court denied this claim, stating that Mr. Walters failed to
demonstrate any ineffective assistance of counsel claim, meaning that his
"cumulative effect" claim necessarily failed. Doc. 14-7 at 443.

As an initial matter, the Supreme Court has not addressed the applicability of
the cumulative-error doctrine to claims of ineffective assistance of counsel. *See Wood
v. Sec'y, Dep't of Corr.*, 793 F. App'x 813, 818 (11th Cir. 2019). Accordingly, Mr.
Walters cannot show the state court's denial of this claim is contrary to, or an
unreasonable application of, clearly established federal law as determined by the
Supreme Court. *See* 28 U.S.C. § 2254(d)(1). But even if the cumulative-error doctrine
applies to ineffective assistance of counsel claims, Mr. Walters' cumulative effect
claim would fail. As the post-conviction court correctly noted and as set forth above,
Mr. Walters' individual claims of ineffective assistance lack merit. Accordingly, his
claim of cumulative error is meritless. *Morris v. Sec'y, Dep't Corrs.*, 677 F.3d 1117,
1132 (11th Cir. 2012). Ground Sixteen therefore warrants no relief.

## IV. CONCLUSION

Based on the foregoing, Mr. Walters is not entitled to relief on any of his
claims. Any of Mr. Walter's allegations not specifically addressed herein have been

found to be without merit.

**Accordingly**:

1. The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**. The Clerk shall enter judgment against Mr. Walters and close this case.

2. This Court should grant an application for a Certificate of Appealability ("COA") only if Mr. Walters makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). He cannot make this showing. Accordingly, his application for a COA is **DENIED**. Because Mr. Walters is not entitled to a COA, he may not proceed on appeal *in forma pauperis*.

**DONE AND ORDERED** at Tampa, Florida, on March 24, 2023.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record
Petitioner, *pro se*